Filed:  May 11, 1999
Corrected order filed: May 19, 1999

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

———————————

No. 98-2513
(CA-96-1005-L)

———————————

Angela L. Brown,

                              Plaintiff - Appellant,

        versus

Donna E. Shalala, etc.,

                              Defendant - Appellee.

———————————

CORRECTED ORDER

———————————

The court amends its opinion filed May 3, 1999, as follows:

On page 3, 4, and 5 - all references to "EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, WASHINGTON, D.C." are corrected to read "EEOC."

                              For the Court - By Direction


                              /s/ Patricia S. Connor
                                     Clerk

                  UNITED STATES COURT OF APPEALS

                    FOR THE FOURTH CIRCUIT
                    _____

                        No. 98-2513
                       (CA-96-1004-L)
                    _____


Angela L. Brown,

                                Plaintiff - Appellant,

          versus


Donna E. Shalala, etc.,

                                Defendant - Appellee.



                    _____

                        O R D E R
                    _____


     The court amends its opinion filed May 3, 1999, as follows:

     On page 3, 4, and 5 - all references to "EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION, WASHINGTON, D.C." are corrected to read
"EEOC."

                                For the Court - By Direction


                                /s/ Patricia S. Connor
                                      Clerk

**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ANGELA J. BROWN,
Plaintiff-Appellant,

v.

No. 98-2513

DONNA E. SHALALA, SECRETARY,
UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN SERVICES,
Defendant-Appellee.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Benson E. Legg, District Judge.
(CA-96-1005-L)

Argued: April 8, 1999

Decided: May 3, 1999

Before WILKINS, WILLIAMS, and KING, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Alice Patricia Frohman, Washington, D.C., for Appellant.
Albert David Copperthite, Assistant United States Attorney, Balti-
more, Maryland, for Appellee. **ON BRIEF:** Lynne A. Battaglia,
United States Attorney, Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Angela Brown filed suit in the United States District Court claiming that her employer, the National Institutes of Health (the NIH), had breached a settlement agreement that resolved earlier discrimination claims by releasing confidential personnel records to the Department of Labor and to the Postal Inspector. Additionally, Brown claimed that the NIH's release of this information was discriminatory and retaliatory and thus violated Title VII, 42 U.S.C.A. §§ 2000e-3 (West 1994) & 2000e-16 (West 1994 & Supp. 1998).

After determining that the settlement agreement required that the personnel information be kept confidential only from prospective employers, and that neither the Department of Labor nor the Postal Inspector were prospective employers, the district court granted summary judgment to the NIH. The district court also concluded that Brown failed to establish a prima facie case of a Title VII violation. Brown appeals these rulings. Finding no error, we affirm.

Summary judgment is appropriate when a party who will bear the burden of proof at trial fails to make a factual showing sufficient to establish an element essential to the case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). We review the district court's grant of summary judgment de novo and view the facts in the light most favorable to Brown. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (noting that the facts and all inferences reasonably drawn therefrom are to be viewed in favor of the non-moving party).

Brown, a black female, was employed at NIH as a GS-6, step 10, Secretary-Typist. When she began work at the NIH, she advised the personnel department that she had a workers' compensation claim pending from her prior employment at the Post Office based upon

2

tendinitis in her wrists, which affected her joints and fingers, and carpal tunnel syndrome. As a result of those conditions, she requested that she be assigned primary duties other than typing. Nevertheless, after her first month of employment, the NIH increased Brown's typing duties. Shortly thereafter, Brown's neurologist issued letters describing her carpal tunnel syndrome and stating that typing was contraindicated for her condition. Brown's supervisor continued to require that she type.

Brown's supervisor also put her on special leave procedures under which she was required to sign in and out whenever she left the office for more than five minutes. Because allegedly insufficient medical documentation had been provided in support of an absence, Brown was put on leave without pay and charged with being AWOL. Additionally, Brown was suspended for three weeks without pay for failing to follow the special leave procedures and for insubordinate behavior. Following these disciplinary actions, Brown was injured in a car accident, and, although she submitted letters from her doctor stating that she could not return to work for an extended period of time, her supervisor found them to be insufficient. As a result, Brown was terminated for failing to follow the special leave procedures, producing insufficient documentation, and remaining AWOL for two months after the car accident.

During the course of her employment at the NIH, Brown had filed several EEO complaints, alleging discriminatory treatment on the basis of race and disability. Additionally, Brown had filed an EEO complaint alleging that her supervisor had retaliated against her for filing the previous EEO complaints. All of the EEO complaints were settled pursuant to an agreement between the NIH and Brown dated March 31, 1992.

The settlement agreement provided, inter alia, that Brown would submit an SF-52 form, Request for Personnel Action, that would indicate resignation, and that the suspensions and AWOL references would be expunged from her personnel folder and changed to leave without pay notations. Additionally, the NIH agreed:

> [T]o provide Ms. Brown with a written letter of reference. This letter of reference provided by the Agency is designed

3

> to preclude the necessity of Ms. Brown's prospective
> employers contacting the [NIH] directly. No future refer-
> ences will be provided by the [NIH] for Ms. Brown. Infor-
> mation contained in any of Ms. Brown's files at the NIH
> will remain confidential.

(J.A. at 21 (¶ 6).)

Three months later, in July 1992, Brown filed another disability
claim. In response to the claim, the Department of Labor requested
Brown's leave records. The NIH answered the request and submitted
Brown's leave records showing the original AWOL and suspension
notations, as well as additional markings noting that the suspensions
had been changed to leave without pay pursuant to a settlement agree-
ment. The Department of Labor eventually denied Brown's claim for
benefits because she had been dismissed for cause. Later, Brown dis-
covered that similar information had been revealed by the NIH to a
Postal Inspector in the course of his work gathering information
regarding Brown's initial workers' compensation claim filed while
she was working for the Post Office.

As a result of the release of the information contained in her per-
sonnel file, Brown filed a complaint at the EEOC alleging
that the NIH had breached the settlement agreement. The EEOC
found that no breach of the settlement agreement had
occurred because the confidentiality provisions in the agreement
applied only to prospective employers.

Thereafter, Brown filed a complaint in district court claiming that
the NIH breached the settlement agreement by failing to keep
Brown's records confidential as required in paragraph six of the
agreement. In addition, Brown alleged that the breach of the agree-
ment constituted a pattern of continuing discrimination on the basis
of race and retaliation in violation of Title VII. In response to the
complaint, the NIH filed a "Motion to Dismiss, or in the Alternative,
Motion for Summary Judgment." (J.A. at 22.) The district court con-
strued all allegations contained in the complaint as true and deter-
mined that Brown did not raise a genuine issue of material fact on her

4

claim of breach of the settlement agreement. Furthermore, the district court ruled that Brown could not make out a prima facie case under Title VII, because the NIH's actions did not constitute adverse employment action.

In its review of the NIH's motion for summary judgment, the district court viewed paragraph six of the settlement agreement as a whole and concluded that the paragraph should not be interpreted as Brown urged, providing a blanket confidentiality requirement applicable to all parties seeking Brown's leave information. Rather, the district court determined, as the EEOC had, that the paragraph was intended to apply only to prospective employers. Because the Department of Labor and Postal Inspector were seeking information regarding Brown's leave time in order to assess workers' compensation claims and not for any reason related to prospective employment, the district court ruled that no breach of paragraph six of the settlement agreement had occurred.

Brown filed a timely notice of appeal. Before us, Brown asserts that the district court erred in granting summary judgment to the NIH because the plain language of paragraph six of the agreement requires that Brown's personnel records remain confidential. Further, Brown argues that the NIH violated paragraph two of the agreement, in which it agreed to expunge the negative attendance references from Brown's personnel records. Additionally, Brown claims that the district court erred in reaching the conclusion that Brown had suffered no adverse employment action.

We have reviewed the record, briefs, and pertinent case law in this matter, and we have had the benefit of oral argument. Our careful review persuades us that the rulings of the district court were correct. Accordingly, we affirm on the reasoning set forth in the district court's opinion. See Brown v. Shalala, C. No. L-96-1005 (D. Md. Aug. 6, 1998).

AFFIRMED

5